**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
WAYNE LEDERER,

|                        |                           |
|------------------------|---------------------------|
|         Plaintiff,     |   **MEMORANDUM**          |
|                        |   **AND ORDER**           |
|     - against -        |                           |
|                        |   CV 16-966 (KAM) (AKT)   |
| AVOTEC, INC.,          |                           |
|                        |                           |
|         Defendant.     |                           |

-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Wayne Lederer ("Lederer" or "Plaintiff") commenced this action against Avotec, Inc.

("Defendant" or "Avotec") on February 26, 2016, alleging infringement of Lederer's '595 patent

entitled "Noise Attenuating Headset." *See generally* Complaint ("Compl.") [DE 1].  The

Complaint asserts that Avotec is in the business of providing accessories for use with MRI

(magnetic resonance imaging) systems.  Specifically, Lederer claims that Avotec is making and

selling magnetically inert, noise-attenuating headsets called "The Conformal™ Headset,"

Compl. ¶ 11, which infringe the '595 patent.  Presently before the Court is Avotec's motion to

stay this action pending the United States Patent and Trademark Office's ("USPTO") completion

of its *ex parte* reexamination of the patent-in-suit.  *See generally* Avotec's Memorandum of Law

in Support of its Motion to Stay ("Def.'s Mem.") [DE 34].  For the reasons which follow, the

Court GRANTS Avotec's motion.

**I.    BACKGROUND**

The following facts are taken from the pleadings and the parties' motion papers.  Lederer

manufactures "sound delivery systems for use with Magnetic Resonance Imaging ("MRI")

machines."  Wayne Lederer's Opposition to Avotec, Inc.'s Motion to Stay the Proceedings

Pending the Reexamination of the Patent-in-Suit ("Pl.'s Opp'n") [DE 35] at 4.  When Lederer's

customer GE notified its vendors that it was implementing more stringent noise attenuation requirements for sound delivery systems, Lederer developed a "Noise Attenuating Headset" which was able to meet GE's new requirements. Pl.'s Opp'n at 4. That technology was embodied in U.S. Patent No. 7,609,844 (the "'844 patent" entitled "Noise Attenuating Headset") which was issued to Wayne Lederer on October 27, 2009.[1] Compl. ¶ 7; Pl.'s Opp'n at 4. On August 21, 2012, the USPTO issued United States Reissue Patent No. RE43,595 (the "'595 patent" entitled "Noise Attenuating Headset") to Wayne Lederer. Compl. ¶ 8. The '595 patent is a reissue of the '844 patent. Pl.'s Opp'n at 4.

In 2010, Lederer sued Newmatic Sound Systems, Inc., for alleged infringement of the '844 patent ("the Newmatic case"). *See Lederer v. Newmatic Sound Systems, Inc.*, No. 10-CV-0271, 2011 WL 31189, at *1 (E.D.N.Y. Jan. 4, 2011). In that case, Judge Seybert granted Newmatic's motion to stay pending the USPTO's *ex parte* reexamination of the patent. *Lederer*, 2011 WL 31189, at *4. Since the reexamination had been granted and the litigation was stayed, Lederer "elected to institute a reissue proceeding to delete some unnecessary elements in the claims of the '844 Patent (e.g., 'a stethoscope-type yoke')." Pl.'s Opp'n at 5. The '844 patent was reissued on August 21, 2012 as patent '595. *Id*. By that time, Newmatic had ceased operations, but its president formed a new company, Nine Eighteen Medical, Inc., and continued selling the alleged infringing products. *Id*. Lederer and Nine Eighteen Medical settled the matter and the case was closed on September 24, 2014. *Id.; see* Declaration of Edmond R. Bannon in Opposition to Avotec Inc.'s Motion to Stay ("Bannon Decl.") [DE 36], Ex. 10.

---

[1]    Plaintiff asserts that Avotec's Memorandum in support of this motion for a stay makes it clear that Avotec "knew about Mr. Lederer's patent and it has no defense to infringement; therefore, it appears to have willfully copied Mr. Lederer's technology to satisfy the new industry standards."

On February 26, 2016, Lederer filed the instant action against Avotec alleging a single claim for patent infringement.[2]  *See generally* Compl.  In the Complaint, Lederer avers that Avotec's "Conformal Headset" is a noise attenuating headset which directly infringes the '595 Patent.  *See* Compl. ¶ 16.  On September 13, 2016, Avotec filed an application seeking leave to file a motion to stay the instant proceeding pending reexamination of the '595 patent.  DE 28. Avotec had filed a petition for *ex parte* reexamination with the USPTO on September 9, 2016, but the agency initially rejected it for failure to comply with certain administrative filing requirements.  *See* September 20, 2016 Civil Conference Minute Order ("9/20/16 CCMO") [DE 32], ¶ 2.  Avotec's counsel refiled the petition on or around September 15, 2016.  *Id*.  The Court denied Avotec's request for a stay, without prejudice, and with the right to renew, in light of the fact that the USPTO had accepted the petition, but had yet to render a determination whether it would, in fact, reexamine the patent-in-suit.  9/20/16 CCMO, ¶ 2.

During the October 25, 2016 status conference, Avotec's counsel informed the Court that the USPTO had, on that very day, issued its decision[3] granting *ex parte* reexamination of the '595 Patent.  *See* October 25, 2016 Civil Conference Minute Order ("10/25/16 CCMO")[DE 33], ¶ 2.  Avotec renewed its request to move for a stay of all proceedings pending reexamination and

---

[2]      In his opposition papers, Plaintiff Lederer describes his surprise that Avotec did not disclose to this Court that it initiated a declaratory judgment action regarding the '595 patent in the Southern District of Florida on December 31, 2015.  Pl.'s Opp'n at 2.  Avotec filed a letter to the that court on March 16, 2016 advising that the Florida federal court did not have subject matter jurisdiction over the action.  Avotec then filed a notice of voluntary dismissal on March 17, 2016.  *Id.*  Although these circumstances have virtually no impact on the instant litigation, the Court assumes Plaintiff has provided this information to support its argument that Avotec unnecessarily delayed its petition for *ex parte* reexamination of the '595 Patent.

[3]      The Court asked defendant's counsel to fax a copy of that decision to the Court.  Counsel did so, with a cover letter dated October 25, 2016.  That decision is part of the record in this case and, therefore, the Court has directed the Clerk's Office to post the decision as well as the cover letter on ECF.  *See* DE 39.

the Court set a briefing schedule. 10/25/16 CCMO, ¶ 2. The Court informed the parties that it

would hold all other discovery in abeyance pending the outcome of Avotec's motion. *Id*. In

accordance with the Court ordered briefing schedule, Avotec's motion was fully briefed. *See*

DE 34, 35 and 37.

## II.    DISCUSSION

Requests for reexamination of a patent to the USPTO are governed by 35 U.S.C. § 302

which states that:

> Any person at any time may file a request for reexamination by the
> Office of any claim of a patent on the basis of any prior art cited
> under the provisions of section 301. The request must be in writing
> and must be accompanied by payment of a reexamination fee
> established by the Director pursuant to the provisions of section
> 41. The request must set forth the pertinency and manner of
> applying cited prior art to every claim for which reexamination is
> requested. Unless the requesting person is the owner of the patent,
> the Director promptly will send a copy of the request to the owner
> of record of the patent.

Reexamination pursuant to § 302 was designed to "'provide an inexpensive, expedient means of

determining patent validity which, if available and practical, should be deferred to by the

courts ....'" *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 389 (W.D.N.Y.

2008) (quoting *Snyder Seed Corp. v. Scrypton Sys.*, *Inc.*, No. 98-87S(H), 1999 WL 605701, *1–

2 (W.D.N.Y.1999)); *Fisher-Price, Inc. v. Kids II, Inc.*, No. 10-00988A(F), 2011 WL 6409665, at

*3 (W.D.N.Y. Dec. 21, 2011) (quoting *Gould v. Control Laser Corporation*, 705 F.2d 1340,

1342 (Fed. Cir.), cert. denied, 464 U.S. 935, 104 S. Ct. 343, 78 L.Ed.2d 310 (1983)) ("'One

purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is

canceled) or to facilitate trial of that issue by providing the district court with the expert view of

the PTO (when a claim survives the reexamination proceeding.'"). Reexamination may result in

(1) "a confirmation of the claims in whole;" (2) "a confirmation of the claims in an amended

4

form;" or (3) "cancellation of the claims." *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 483 (D. Md. 2006) (citing *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 1990)); *Rosco, Inc. v. Mirror Lite Co.*, No. CV-96-5658, 2007 WL 2296827, at *1 (E.D.N.Y.  Aug. 6, 2007).

"The district court has the inherent power to control and manage its docket, which includes the authority to order a stay pending the outcome of reexamination proceedings in the PTO." *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing *Gould*, 705 F.2d 1340; *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426 (Fed. Cir. 1988)); *Lederer v. Newmatic Sound Sys.*, No 10-271, 2011 WL 31189, at *2 (E.D.N.Y. Jan. 4, 2011) (citing *Xerox Corp.*, 69 F. Supp. 2d at 406); *Robbins v. H.H. Brown Shoe Co.*, No. 08-6885, 2009 WL 2170174, at *1 (S.D.N.Y. June 30, 2009) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)) ("'The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'");  *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 435 (N.D.N.Y. 2007) (citing *Landis*, 299 U.S. at 254–55, 57; *Abraham Natural Foods Corp. v. Mount Vernon Fire Ins. Co.*, No. 05-4824, 2007 WL 1592977, at *2 n. 7 (E.D.N.Y. June 1, 2007)).

"In assessing the merits of a stay, courts generally examine three factors:  '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) how far the litigation has already progressed.'" *Lavagear, Inc. v. Okamoto USA, Inc.*, No. 12-2317, 2013 WL 145765, at *1 (E.D.N.Y. Jan. 14, 2013) (quoting *Aerotel, Ltd. v. IDT Corp.*, No. 3-6496, 2003 WL 23100263, at *1 (S.D.N.Y. 2003)) (citing *Sanofi–Synthelabo v. Apotex, Inc.*, No. 02

Civ. 2255, 2010 WL 1541435, at * 1 (S.D.N.Y. Apr. 15, 2010)); *Pass & Seymour, Inc.*, 532 F. Supp. 2d at 435 (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406–07 (W.D.N.Y. 1999)).

There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of the USPTO reexamination or reissuance proceedings." *Robbins*, 2009 WL 2170174, at *1 (quoting *ASCI v. STD Entm't USA. Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)) (internal quotation marks omitted); *see Bausch & Lomb Inc.*, 554 F. Supp. 2d at 389–90 (quoting *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, No. 03-40493, 2004 WL 1968669, *3 (S.D. Iowa 2004) (citing *Card Tech. Corp. v. DataCard Corp.*, 2007 WL 551615, *4 (D. Minn. 2007); *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97-8815, 2000 WL 1134471, at *2 (S.D.N.Y. 2000); *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996)) ("[C]ourts 'routinely' issue stays pending the outcome of reexamination proceedings, particularly in cases where the litigants have not made substantial progress towards trial."). Granting a stay pending reexamination may offer a number of advantages, including those cited by the court in *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without further use of the court.

5. The record of the reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

554 F. Supp. 2d at 389–90 (citing *Snyder Seed Corp.*, 1999 WL 605701 at \*3; *Card Tech. Corp.*, 2007 WL 551615, at \*3; *EchoStar Tech. Corp. v. TiVo, Inc.*, 2006 WL 2501494, \*1–2 (E.D. Tex. 2006); *Pegasus Dev. Corp. v. Directv, Inc.*, No. 00-1020, 2003 WL 21105073, at \*2 (D. Del. 2003); *Perricone v Unimed Nutritional Svcs., Inc.*, CIV. A. 301 CV 512, 2002 WL 31075868, at \*1 (D. Conn.  July 18, 2002); *Softview Computer Prods. Corp.*, 2000 WL 1134471, at \*2). Despite the advantages of granting such a stay, there is no "per se rule" that it should be granted in every case. *Robbins*, 2009 WL 2170174, at \*1 (quoting *Fresenius Med. Care Holdings v. Baxter Int'l. Inc*., No. 03-1431, 2007 WL 1655625, \*3 (N.D. Cal. June 7, 2007) (citations and quotation marks omitted)) (internal quotation marks omitted).

The decision whether to grant a request for a stay ultimately falls within the court's discretion.  *Baseball Quick, LLC v. MLB Advanced Media, L.P*., No. 11-1735, 2013 WL 2257094, at \*2 (S.D.N.Y. May 23, 2013) (citing *P & G v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008)).  If "protracted, expensive discovery or trial preparation" has already taken place, then this fact will weight against granting a stay.  *See Xerox Corp. v. 3Com Corp*., No. 97-6182T, 1999 WL 375910, at \*4 (W.D.N.Y. Feb. 18, 1999) (quoting *Freeman v. Minnesota Min. and Mfg. Co.*, 661 F. Supp. 886, 888 (D. Del. 1987)) (internal quotation marks omitted); *see also Bausch & Lomb Inc.*, 554 F. Supp. 2d at 389 ("Resort to the reexamination procedure should not be sanctioned through the issuance of a stay, however, where it is pursued for tactical advantage after substantial and costly discovery has been conducted or where trial is

imminent."); *Fresenius Med. Care Holdings*, 2007 WL 1655625, at *3 (quoting *Soverain Software LLC v. Amazon .Com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)) ("[S]uch a rule 'would invite parties to unilaterally derail' litigation."). Moreover, courts have denied a stay where it would "continue to deprive the plaintiff, during the pendency of the reexamination, of the right to exclude others from making, using, offering to sell, or selling the patented invention[,]" resulting in undue prejudice or a clear tactical disadvantage to the non-moving party. *Perricone*, 2002 WL 31075868, at *3.

The Court now turns to an analysis of the three factors set forth in *Aerotel* for determining whether a stay is warranted in the current circumstances.

### A.    Prejudice to the Non-Movant

Avotec argues that Plaintiff "will not be *unduly* prejudiced by the requested stay" and that, in any event, mere prejudice is not enough to deny a stay. Def.'s Mem. at 5. In fact, Avotec relies on the fact that when Plaintiff Lederer brought suit against Newmatic regarding the'844 Patent, Judge Seybert granted a stay pending the re-examination. *Id.* at 6. Lederer contends, on the contrary, that his business will be harmed since Avotec is a competitor and that a lengthy delay between "direct competitors can constitute undue prejudice." Pl.'s Opp'n at 8-9.

"The question of undue prejudice or clear tactical advantage is informed by four sub-factors, including '(1) the timing of the review request; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties.'" *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 13-0633, 2014 WL 201965, at *4 (N.D.N.Y. Jan. 15, 2014) (quoting *Davol, Inc. v. Atrium Med. Corp.*, No. 12–CV–0958, 2013 WL 3013343, at *2 (D. Del. June 17, 2013)); *PPC Broadband, Inc. v. Corning Gilbert, Inc.*, No. 512-0911, 2014 WL 12599388, at *6 (N.D.N.Y. Mar. 13, 2014) (citing same).

### 1.    Timing of the Review Request and Timing of Request for Stay

Lederer highlights that "Avotec waited more than (9) months after it filed the Florida action and six (6) months after this action was commenced to file its request for reexamination. This suggests that Avotec is seeking the stay to gain a tactical advantage." Pl.'s Opp'n at 9. The Court acknowledges that Avotec did not file its petition for reexamination immediately after it was served with Lederer's Complaint. It did so six and a half months thereafter. However, that delay is not of such length that it suggests in itself some strategic maneuvering by Avotec. *See Ever Win Int'l Corp. v. Radioshack Corp*., 902 F. Supp. 2d 503, 508 (D. Del. 2012) (although the defendant's request for reexamination was not filed until seven months after the plaintiff commenced the action, the court determined that the timing did not suggest that the defendant sought an inappropriate tactical advantage.). Moreover, the Court takes note that Avotec filed its first motion to stay on September 13, 2016, just four days after filing its petition with the USPTO.

Lederer correctly asserts that he may be prejudiced by the delay which will accompany the reexamination process. However, that possibility is "present in every case where a stay is sought to allow the PTO to re-examine a patent." *Gaymar Industr., Inc. v. Cinncinati Sub-Zero Prods. Inc.*, No. 08-CV-0299, 2009 WL 3162213, at *3 (W.D.N.Y. Sept. 28, 2009); *Aerotel*, 2003 WL 23100263, at *2. However, Lederer's prejudice argument is undercut by the fact that he did not promptly seek to assert his rights with respect to the '595 patent. *See Lavagear*, 2013 WL 145765, at *2. According to Avotec, in December 2014 -- at the same annual trade show that took place in December 2015 which Lederer references -- Lederer informed Avotec's

President, Paul Bullwinkel,[4] that Avotec's headset infringed the '595 Patent. *See* Defendant's Amended Answer and Counterclaims [DE 16] ¶ 13. In response to these accusations, Bullwinkel explained that the headset is a derivation of Avotec's "Silent Scan" system, which pre-dates the '595 patent. *Id.* Avotec contends that despite having knowledge of the Conformal Headset as early as December 2014, Lederer did not commence the instant suit until February 2016. An argument can be made that if Lederer were as concerned about the consequences of a delay as he now represents, he would have filed suit against Avotec shortly after discovering the alleged infringement. *See Lavagear*, 2013 WL 145765, at *2.

Likewise, Lederer's position is further undermined by the fact that he is not pursuing a preliminary injunction. *See VirtualAgility Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1319 (Fed. Cir. 2014). Although the Court appreciates Lederer's assertion that his resources are limited, "the fact that it was not worth the expense to ask for this remedy contradicts [his] assertion that [he] needs injunctive relief as soon as possible." *Id.*

Lederer also argues that "memories of witnesses will undoubtedly fade over time, individuals may become unavailable, and follow-up documents and other materials may be lost." Pl.'s Opp'n at 9. Yet Lederer fails to specify why such a fear is justified in the circumstances of this case. *See id.* The Court is unpersuaded by this conclusory statement. *See generally Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 277 F.R.D. 84, 88 (W.D.N.Y. 2011) (citing *Alltech, Inc. v. Agra–Partners, Ltd.*, No. 6-337-R, 2007 WL 3120085, *2 (W.D. Ken. 2007); *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, No. 08-589, 2010 WL 3239001, *2 (N.D. Ohio 2010)); *see also VirtualAgility Inc.*, 759 F.3d at 1319 ("It is

---

[4]     Although Avotec does not provide Mr. Bullwinkel's first name or position in any of its papers, the Court notes that he is identified in Plaintiff's Complaint as "Paul Bullwinkel" and Avotec's "President." Compl. ¶ 12.

undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice.").

### 2.    *Status of Review Proceedings*

The fact that the USPTO has already granted Avotec's petition for reexamination weighs in favor of granting its motion to stay. *See Rensselaer Polytechnic Inst*., 2014 WL 201965, at *5 (discussing the divide among courts regarding whether to grant a request for a stay *prior to* the USPTO accepting a petition for reexamination); *see also PPC Broadband, Inc.*, 2014 WL 12599388, at *6 (citing *Nexans Inc. v. Belden Inc*., No. 12-1491, 2014 WL 651913, at *1 (D. Del. Feb. 19, 2014), report and recommendation adopted, No. 12-1491, 2014 WL 1232218 (D. Del. Mar. 12, 2014); *Softview LLC*, 2013 WL 4757831, at *2; *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 12-1727, 2013 WL 6133763, at *4 (M.D. Fl. Nov. 21, 2013)) ("[O]nce a PTAB panel has instituted IPR [inter partes[5] review], the clear weight of authority favors the issuance of a stay.). The Court points out that in granting Avotec's petition for a reexamination, the USPTO has stated that "[a] substantial new question of patentability (SNQ) is raised affecting claims 9-47 of US Patent RE43595 ("the '595 Patent") by the corrected request for

---

[5]    This Court is aware that there are two types of reexamination proceedings: *ex parte* and *inter partes. "*An *inter partes* reexamination, in contrast to the *ex parte.* reexamination, provides a third party the right to participate in the reexamination process. *See* 35 U.S.C. § 314. The results of the reexamination are thus binding on the third party requester in any subsequent or concurrent civil action. *Id.* at § 315(c)." *Tomco Equip. Co. v. Southeastern Agri-Sys., Inc*., 542 F. Supp. 2d 1303, 1306-07 (N.D. Ga. 2008). Where a party is seeking an *ex parte* reexamination under 356 U.S.C. § 302 rather than an *inter partes* reexamination under 35 U.S.C. § 315(c), "the USPTO's ruling does not have stringent estoppel or *res judicata* effects binding on this Court." *Prestige Jewelry Intern., Inc. v BK Jewellery HK*, 11 CIV. 2930, 2012 WL 2899077, at *2 (S.D.N.Y. July 16, 2012). Avotec's petition was for an *ex parte* reexamination of the '595 Patent here.

*ex parte* reexamination filed September 15, 2016." DE 39 (USPTO Order Granting Reexamination). Consequently, Lederer's ability to succeed in the current action is dependent upon the validity of the'595 Patent. The granting of the reexamination petition raises a question as to the validity of claims 9-47 based on the prior art cited.

### 3.    *Relationship of the Parties*

Avotec argues that "Lederer will not be *unduly* prejudiced by the requested stay." Def.'s Mem. at 5 (emphasis in original). In support of its position, Avotec explains that "[h]ere, the only prejudice Lederer might complain of is Avotec's alleged continued 'infringing' of the '595 patent by sales of Avotec's Conformal Headset. But even this assertion is legally insufficient to meet the undue prejudice required for this factor to weight in favor of denying the stay." *Id*. Lederer counters by arguing that the parties are direct competitors and a stay would "allow[ ] Avotec to continue infringing the patent-in-suit at will, taking market share and customers and effectively denying Mr. Lederer his day in court." *See* Pl.'s Opp'n at 10.

Where the parties are direct competitors, as they are here, courts have held that this fact weighs against the imposition of a stay pending reexamination of the patent-in-suit. *See Destination Maternity Corp. v. Target Corp.,* 12 F. Supp. 3d 762, 768 (E.D. Pa. 2014) (alteration in original) (quoting *SenoRx, Inc. v. Hologic, Inc*., No. 12–173, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013)) (citing *Air Vent v. Owens Corning Corp.*, No. 10-1699, 2012 WL 1607145, at *3 (W.D. Penn. May 8, 2012)) ("[W]hen the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."). However, the extent to which such a relationship ultimately influences a court's decision on whether to grant a stay is largely dependent upon the particular circumstances

of the case. *Compare Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, No. 12-0904S, 2013 WL 5567499, at *4 (W.D.N.Y. Oct. 8, 2013) (citing *Nippon Steel & Sumito Metal Corp. v. Posco*, No. 12–2429, 2013 WL 1867042, at *5 (D.N.J. May 2, 2013) (in determining that a stay would unduly prejudice the patentee, the court stated that the patentee "has put forth some evidence, that it has lost more than 72% of its GOES market share, while POSCO correspondingly has expanded its market presence by 412%."); *Imagevision.Net, Inc. v. Internet Payment Exchange, Inc.*, No. 12–054, 2013 WL 663535, *6 (D. Del. Feb.25, 2013), report and recommendation adopted 2013 WL 1743854 (D. Del. April 22, 2013); *Tesco Corp. v. Weatherford Int'l Inc.*, 722 F.Supp.2d 755, 762 (S.D. Texas 2010)) ("In light of its representation of additional pending sales by defendants within the United States and direct competition between the parties for market share in an emerging market for aseptic bottling, the Court finds that a stay of this proceeding would prejudice Steuben."); *PPC Broadband, Inc.*, 2014 WL 12599388, at *7 (quoting *Pass & Seymour, Inc.*, 532 F. Supp. at 423) ("Undeniably, the direct competitive relationship of two parties to litigation is a significant, potentially overriding factor in deciding whether to grant a stay, particularly when they are direct competitors in a 'niche market.'"); *Imagevision.Net, Inc*, 2013 WL 663535, *6 (affirming lower court's finding that the patentee and movant were direct competitors since "[movant] offers point-of-service solutions for collecting customer payments in the healthcare and commercial marketplaces by marketing at least its CareView solution directly against [patentee] patented HealthPay24® solution."); *TouchTunes*, 676 F. Supp. 2d at 178, *with VirtualAgility Inc.,* 759 F.3d at 1310 (The relationship between the patentee and defendant, as direct competitors, weighed, "[a]t best…slightly against a stay."); *Lederer*, 2011 WL 31189, at *2; *Perricone*, 2002 WL 31075868, *3 ("[T]he loss of customers and sales of the

13

plaintiff's product and the erosion of the plaintiff's position in the market-while serious, does not

amount to undue prejudice.").

In *Lederer v. Newmatic Sound Systems, Inc.*, involving the same Plaintiff as now before

the Court, Judge Seybert acknowledged that Newmatic and Lederer were "competitors in the

field of manufacturing sound delivery devices for use with Magnetic Resonance Imaging

("MRI") machines." *Lederer*, 2011 WL 31189, at *1. However, the Court concluded that

Lederer's claims that he is an "individual inventor with limited resources who faces 'the very

real possibility' that he may be driven out of business if [the] action is stayed" were "too

speculative to conclude that" Lederer would "suffer an undue burden." *Lederer*, 2011 WL

31189, at *2 (citing *Gaymar*, 2009 WL 3162213, at *3; *K.G. Motors, Inc. v. Specialized Bicycle

Components, Inc.*, No. 08-6422T, 2009 WL 3179129, at *3 (W.D.N.Y. July 22, 2009)). Judge

Seybert further explained that any alleged prejudice to Lederer "can be cured by a damages

award that compensates Plaintiff for this additional infringement should he ultimately prevail."

*Lederer*, 2011 WL 31189, at *3 (citing *Perricone*, 2002 WL 31075868, at *3).

The Court notes that Lederer failed to produce any proof, in the form of affidavits,

business records, or otherwise, of the asserted impact that Avotec's infringement has had and

will potentially have on his business. Without supporting evidence, Lederer's claims are too

conclusory to persuade the Court to deny the stay. *See K.G. Motors, Inc.*, 2009 WL 2179129, at

*3 (citing *Akzenta Paneele + Profile GmbH*, 464 F. Supp. 2d at 485); *see also VirtualAgility

Inc.*, 759 F.3d at 1318 (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed.

Cir. 1986), *abrogated on other grounds* by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665

(Fed. Cir. 2008) (en banc)) (In determining that the district court clearly erred when it held that

the undue prejudice factor weighed heavily against a stay, the court acknowledged that the

14

parties occupied "the same business space" but highlighted that there was no evidence in the record that the patentee and the defendant "ever competed for the same customer or contract." The court noted, however, that "direct evidence of such competition is not required to establish that VA and Salesforce are competitors, especially at such an early stage of the proceedings.").

Having evaluated the four *Davol* sub-factors, the Court turns now to the second prong of the *Aerotel* analysis, namely, whether a stay will simplify the issues in question and trial of the case.

### B.      Simplification of Issues

Avotec argues that staying this case will "significantly simplify the issues before the Court." Def.'s Mem. at 8. More particularly, Avotec explains that the USPTO has instituted a reexamination of *every* claim of the '595 Patent. *Id*. Consequently, according to Avotec,

> if all asserted claims of the '595 patent are invalidated, the litigation will be greatly simplified. But even if only some of the asserted claims are invalidated, the issues for litigation will be simplified and the Court "will not have wasted substantial resources resolving the patentability issue" of those claims.

*Id*. (citing *Lederer*, 2011 U.S. Dist. LEXIS 757, at *8). In the latter scenario, Avotec argues that any resulting patent "will be so limited that Avotec's Conformal Headset could not reasonably be argued to infringe." *Id*. at 11. Avotec maintains that even if the claims remain unchanged, the USPTO's evaluation of those claims will provide valuable analysis to this Court. *Id*.

Lederer clearly disagrees and argues that a stay of this action will complicate the issues before the Court. Pl.'s Opp'n at 11. According to Lederer, "in the prior reexamination of the '844 Patent, the eight (8) original claims were withdrawn and replaced by thirty-nine (39) claims in the reissued '595 Patent. So if the case had not settled and had gone to trial, the issues would

15

have become more complicated."[6]  Pl.'s Opp'n at 11-12.  In its Reply, Avotec contends that "Lederer's argument to the Court here is that it is simpler to litigate invalid claims, and therefore the Court should proceed before the USPTO can invalidate them."  Def.'s Reply, at 7.  On balance, the Court finds Lederer's argument unavailing.  A court would be hard pressed to justify denying a stay on the grounds that the USPTO's review may trigger a reissuing that will result in additional claims, thereby further complicating the case.  Basing a determination on the supposition of what the USPTO might do is not a reasonable approach here.

Lederer further argues that "[i]f fewer than all of the asserted claims of the '595 Patent are rejected by the Examiner, numerous issues, including non-infringement, anticipation, obviousness, estoppel and laches will still remain with respect to the reexamined patent."  Pl.'s Opp'n at 12.  In support of his position, Lederer relies on *TouchTunes Music Corp. v. Rowe Int'l Corp*., 676 F. Supp. 2d 169, 177 (S.D.N.Y. 2009).  *TouchTunes Music Corp*. involved an appeal to the Federal Circuit from the USPTO examiner's rejection of four patents owned by the defendants.  *Id*. at 170-171.  Plaintiff TouchTunes sought a declaratory judgment of non-infringement and invalidity of six patents relating to computer jukeboxes. *Id*. at 170.  Defendant Arachnid moved for a stay of proceedings pending the *ex parte* re-examination of some of the six patents.  *Id*.  The court held that a stay pending reexamination would not simplify the issues before the court and denied Arachnid's motion to stay.  *Id*. at 170, 177.  Several factors appear to have influenced the court's decision regarding the simplification factor.  Included in the court's discussion of those factors was the analysis cited by Lederer -- if "fewer than all of the claims of the reexamination patents are found [to] have been properly rejected by the Examiner, numerous issues, such as non-infringement, lack of written description, anticipation, and obviousness will

---

[6]      Lederer is referencing *Lederer v. Newmatic Sound Systems, Inc*., 2011 WL 31189.

remain with respect to the Arachnid reexamination patents." *Id*. at 177 (citing *Mobile Med. Int'l Corp. v. Advanced Mobile Hosp. Sys., Inc.*, No. 07-231, 2008 WL 1767724, at *2 (D. Vt. Apr. 15, 2008)).

The Court points out that the facts in *TouchTunes* are distinguishable.  At the time of the court's decision in *TouchTunes*, the Examiner had already confirmed the validity of two claims contained in the reexamination patents.  *Id*. at 177.  Here, the USPTO has yet to issue a determination as to the validity of any of the '595 Patent's claims.  The court's assessment in *TouchTunes* that a stay would not simplify the issues was also impacted by the fact that the reexamination proceeding involved only four of the six patents-in-suit.  *Id*.  Therefore, the court explained, "even if the Examiner's rejection of the Arachnid reexamination patents is upheld, there will remain significant issues in connection with the validity of the '765 and '780 patents." *Id*. at 177.  In the instant case, there is only one patent at issue and the USPTO is reexamining every claim of that patent. Def.'s Mem. at 3.  Although the Court finds *TouchTunes* to be informative, the weight afforded that opinion is tempered by the factual distinctions noted here.

Lederer further argues that "despite a delay of the litigation that may last two or three years, Avotec will be free to assert in any subsequent proceedings before this Court the exact same grounds of invalidity that are before the Patent Office." Pl.'s Opp'n at 12.  Lederer is correct to the extent that the reexamination brought by Avotec is an *ex parte*, not *inter partes* proceeding.  *Id*.  This particular factor, standing alone, does not mandate denying a stay.  In *Steuben Foods, Inc. v. GEA Process Engineering, Inc*., a case involving *ex parte* reexamination, the court denied a request for a stay, in relevant part, because the reexamination would "not address all of the issues pending in this action and would not preclude [the movant] from challenging the validity of claims confirmed by the PTO in this action." 2013 WL 5567499, at

*4 (citing *Nippon Steel & Sumito Metal Corp.*, 2013 WL 1867042, at *9 ("Ex-parte reexamination is 'the form of reexamination less likely to simplify the issues' because the requesting party is not estopped from later asserting, in civil litigation, all of its invalidity arguments, even those rejected by the USPTO."); *Fischer–Price*, 2011 WL 6409665 at *4; *TouchTunes*, 676 F. Supp. 2d at 177; *Robbins*, 2009 WL 2170174, at *2)).

Similarly, the court in *Prestige Jewelry, Inc. v. BK Jewelry HK*, held that because the case involved *ex parte* reexamination, the court would be required to rule on the patent-in-suit's validity regardless of the USPTO's determination.  No. 11-2930, 2012 WL 2899077, at *2 (S.D.N.Y. July 16, 2012) (citing *Tomco Equip. Co.*, 542 F. Supp. 2d at 1305; *eSoft, Inc. v. Blue Coat Systems, Inc.*, 505 F. Supp. 2d 784, 785 (D. Col. 2007)).  The court found that because the USPTO's ruling does not have a binding effect, that factor favored denial of a stay.  *Id*.

A relatively recent case, however, appears to alter the landscape somewhat with respect to the effect of a USPTO finding of invalidity.  *See Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013).  In *Fresenius*, the plaintiff brought a declaratory judgment action against the Baxter defendant healthcare entities alleging that certain claims of Baxter's '434 patent -- directed to a hemodialysis machine -- were invalid and not infringed.  *Fresenius*, 721 F. 3d at 1331-32.  Baxter counterclaimed for infringement.  *Id*. at 1332.  The district court entered judgment against plaintiff Fresenius, finding that the specific claims were infringed and were not invalid.  *Id*.  On appeal, although the parties did not contest infringement, the Federal Circuit affirmed the district court's holding that the claims were not invalid, but remanded the case to the district court to reconsider its injunction and post-verdict damages.  *Id*.

While *Fresenius* was pending on appeal, the USPTO completed an *ex parte* re-examination of the '434 patent and found that all of the asserted claims were invalid.  *Id*.  The

Federal Circuit affirmed the USPTO's decision in the re-examination. *Id*. The district dourt, meanwhile, entered judgment against plaintiff Fresenius in the pending infringement action. *Id.* Both sides appealed. The Federal Circuit described the issue on appeal to be "whether the cancellation of the asserted claims of the [patent-in-suit] by the PTO, pursuant to the agency's statutory reexamination authority, must be given effect in this pending infringement litigation." *Id*. at 1332. The appellate court answered the question in the affirmative, determining that "when a claim is cancelled [by the USPTO], the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Id.* at 1340, 1347. The court added that ". . . the language and legislative history of the reexamination statute show that Congress expected reexamination to take place concurrent with litigation, and that cancellation of claims during reexamination would be binding in concurrent infringement litigation." *Id*. at 1339 (citing Mark D. Janis, *Rethinking Reexamination:  Toward a Viable Administrative Revocation System for U.S. Patent Law*, 11 Harv. J.L. & Tech. 1, 82 (1977)). This Court has found various cases which have subsequently relied on the Federal Circuit's reasoning in *Fresenius.  See Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc*., No. 15-CV-1259, 2017 WL 3309724, at *8 (S.D.N.Y. Aug. 2, 2017) (quoting *Fresenius USA, Inc.*, 721 F.3d at 1340) (In determining that a stay was justified, the court explained that "[i]n the event that 'a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot.'"); *see also Lotes Co. v. Hon Hai Precision Indus. Co*., No. C 11-01036, 2017 WL 282583, at *2 (N.D. Cal. Jan. 23, 2017) (citing *Fresenius USA, Inc.*, 721 F.3d at 1336–40) (Citing to *Fresenius*, the court explains that "[c]ancellation of that patent's claims would have extinguished any pending litigation based on those claims and thus obviated any need to assert intervening rights.); *Warsaw Orthopedic,*

*Inc. v. Nuvasive, Inc.*, No. 308CV01512, 2016 WL 4466973, at *2 (S.D. Cal. June 15, 2016) (citing *Fresenius USA, Inc.*, 721 F.3d at 1340) (Citing *Fresenius*, the Court explained that if the PTO's determination to invalidate all of the claims asserted in the patent-in-suit is affirmed, then there would no longer be any cause of action to assert the patent.); *Icon Health & Fitness, Inc. v. Johnson Health Tech N. Am., Inc.*, No. 1:10-CV-00209, 2015 WL 12780595, at *2 (D. Utah May 12, 2015) (citing *VirtualAgility*, 759 F.3d at 1309; *Cellport Systems, Inc. v. BMW of North America, LLC*, Case no. 14–cv–01631, 2015 WL 1826584 (D. Colo. Apr. 17, 2015)) (After referencing *Fresenius USA, Inc.*, the court determined that it would grant the request for a stay while the Patent Office conducts its review so that the issues before the court could be simplified and the trial, streamlined.); *Peavey Elecs. Corp. v. Music Grp. Servs. US, Inc.*, No. 3:13-CV-934, 2014 WL 12323520, at *5 (S.D. Miss. Mar. 10, 2014) ("Because *Fresenius* now imbues a PTO reexamination with retroactive effect, should this Court go forward with a trial and reach a determination about the '052 patent's underlying validity that is inconsistent with the determination of the PTO, this Court must defer to the PTO's determination, and this Court would have mandated an unnecessary trial.").

This Court finds that regardless of the outcome of the USPTO's reexamination of the '595 Patent, granting the stay and permitting the reexamination to move forward will pare down the issues at trial and will provide the Court with the USPTO's insight. *Lavagear Inc.*, 2013 WL 145765, at *2 (citing, *Lederer,* 2011 WL 31189, at *3; *Bausch & Lomb, Inc.,* 554 F. Supp. 2d at 391; *Pass & Seymour, Inc.,* 532 F. Supp. 2d at 436; *Softview Computer Prods. Corp.,* 2000 WL 1134471, at *2) ("[A] number of courts have recognized the value of a reexamination proceeding in paring down the questions in litigation.").  This protocol is particularly apt in light of the fact

that Lederer's Complaint alleges a single claim of patent infringement and that all claims of the '595 Patent are being reexamined. *See id*. at *3.

      **C.**     **How Far the Litigation Has Progressed**

      As to how far the litigation has progressed, Avotec argues that this case is in its early stage which weighs in favor of a stay. Def.'s Mem. at 11. According to Avotec, "[t]hough initial discovery has taken place, no substantive claim construction tasks have taken place, no deadlines for expert discovery have been set and neither a *Markman* hearing nor trial has been scheduled." *Id*. Lederer counters by arguing that "[b]oth parties have engaged in substantive discovery including substantial document production, exchange of interrogatory responses and the exchange of infringement and invalidity contentions pursuant to the Court's Initial Case Management and Scheduling Order." Pl.'s Opp'n at 13. The reason why claim construction papers have not been exchanged and deadlines not set, Lederer maintains, is Avotec's refusal to comply with the Court's discovery related directives. *See id*. at 14. Lederer contends that "[g]ranting a stay would simply reward Avotec for its dilatory tactics." *Id*. Plaintiff also asserts that only 12% of *ex parte* reexamination petitions result in cancellation of *all* of the claims of the patent under reexamination. *Id*. at 6. Consequently, Plaintiff argues, it is "extremely likely that Avotec will have to face a jury in this Court and answer for its infringement of the '595 Patent anyway. A stay will only delay the inevitable." *Id.*

      The Court acknowledges that Avotec's dragging its feet with respect to complying with its discovery obligations has delayed the progress of this case. The Court set a deadline of July 21, 2016 for the parties to exchange responses to discovery demands and interrogatories. DE 22. During the September 20, 2016 conference, the Court learned that it was not until

August 20, 2016 — more than five weeks after the deadline expired — that Avotec served its discovery responses on Lederer.  DE 32, ¶ 3.  Moreover, the responses which were served were incomplete and consisted of a mere nine documents.  *Id*.  The Court set a September 30, 2016 deadline for Avotec to supplement its responses, or face a fine for each day that responsive documents  were withheld.  *Id.*  The Court also directed counsel to meet and confer by October 5, 2016 in an effort to resolve their respective productions.  *Id.*  Counsel were directed to bring any remaining issues to the Court's attention for intervention by October 20, 2016 if necessary.  *Id*.  In light of Avotec's failure to fully comply with its discovery obligations, the Court informed the parties that it was not setting deadlines for depositions or expert discovery at that time, but would take up those issues during the next scheduled conference on October 25, 2016.  *Id*. ¶ 4.  Further, based on the circumstances, the Court denied, without prejudice, the parties' motion to modify the claim construction briefing schedule.  *Id*.

The Court notes, however, that Avotec timely submitted its supplemental responses to Lederer's document demands and the parties were able to resolve their respective objections regarding document production without Court intervention.  DE 33, ¶ 1.  Courts have held that when "significant milestones" have yet to be met, such as claim construction, expert discovery and summary judgment motion practice, as is the case here, this factor weighs in favor of granting the requested stay.  *CANVS Corp. v. United States*, 118 Fed. Cl. 587, 595-596 (2014) (citing *Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 10-02051, 2012 WL 1232187, at *4 (N.D. Cal. Apr. 12, 2012) (favoring a stay even though claim construction briefing was complete); *TAS Energy, Inc., v. San Diego Gas & Elec. Co.*, No. 12-2777, 2014 WL 794215, at *3 (S.D. Cal. Feb. 26, 2014) (favoring a stay "would not be improper" if "expert discovery, summary judgment motions and trial" have yet to be completed); *Affinity Labs of Texas LLC v.*

*Samsung Electronics Co., Ltd.*, No. 14-2717, 2014 WL 3845684, at *2 (N.D. Cal. Aug. 1, 2014) (favoring a stay where discovery, depositions, expert reports, and summary judgment were not completed)) (denying stay where (1) the parties had responded to written discovery, "exchanged thousands of pages of documents, inspected prior art," took depositions, exchanged claim construction positions, and (2) the court had resolved numerous discovery disputes in multiple orders and had entered partial summary judgment invalidating certain claims).  In light of the stage of the instant litigation, the Court finds that this factor weighs in favor of granting the stay.

Based on this record and for the reasons stated, the Court finds that a stay should be granted pending the USPTO's reexamination proceedings.  *Lavagear*, 2013 WL 145765, at *3; *Spread Spectrum Screening LLC*, 277 F.R.D. at 89.  Therefore, Avotec's motion for a stay is granted and this case is stayed during the reexamination.

## III.   CONCLUSION

For all of the foregoing reasons, Defendant Avotec's motion to stay the instant proceedings pending the USPTO's *ex parte* reexamination of the '595 Patent is GRANTED. Counsel for the parties are directed to contact this Court in writing to request a status conference within seven (7) days of a decision by the USPTO on the pending reexamination proceeding.

**SO ORDERED:**

Dated: Central Islip, New York
        August 15, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge